UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-5430-GW-JPRx | Date | September 5, 2019 |
| Title | *Itxel Toribio v. ITT Aerospace Controls LLC, et al.* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| Javier Gonzalez | Anne Kielwasser | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Daniel J. Park | Tamara I. Devitt |

**PROCEEDINGS:** **PLAINTIFF ITXEL TORIBIO'S MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447 [9]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court grants Plaintiff's motion and remands the matter to the Superior Court for the County of Los Angeles.

: 08

Initials of Preparer JG

***Toribio v. ITT Aerospace Controls, LLC, et al.***, Case No. 2:19-CV-05430-GW (JPRx)
Tentative Ruling on Motion to Remand Pursuant to 28 U.S.C. § 1447

ITT Aerospace Controls LLC ("Aerospace") removed this action to this Court on June 21, 2019. Itxel Toribio ("Plaintiff") now moves to remand the action, arguing that Aerospace did not satisfy, and has not satisfied, the applicable preponderance-of-the-evidence standard for demonstrating a sufficient amount in controversy ($5,000,000 or more) to invoke jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 788-89 (9th Cir. 2018) ("If the amount in controversy is not clear from the face of the complaint, 'the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged.'") (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).

Plaintiff sued Aerospace and ITT, Inc. (collectively, "Defendants"), asserting eight claims for relief: 1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime), 2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums), 3) violation of California Labor Code § 226.7 (unpaid rest period premiums), 4) violation of California Labor Code §§ 1194 and 1197 (unpaid minimum wages), 5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid), 6) violation of California Labor Code § 226(a) (non-compliant wage statements), 7) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses), and 8) violation of California Business & Professions Code § 17200, et seq. Plaintiff seeks to represent a class. *See* Complaint ¶¶ 1, 12-13. The Complaint includes the following allegations:

Defendants jointly employed Plaintiff as an hourly-paid or non-exempt employee from approximately October 2017 to November 2018. *See id.* ¶¶ 17-18, 21. Defendants, "in a pattern and practice of wage abuse," failed to compensate Plaintiff and other employees – who worked over 8 hours in a day and/or 40 hours in a week for Defendants – for all hours worked, missed meal periods and/or missed rest breaks. *See id.* ¶¶ 19, 24-25, 35-37, 49, 57-60, 67-69, 74. In addition, "[a]s a pattern and practice," Defendants did

not pay Plaintiff and other (but not all) class members who were discharged or resigned the amounts owed to them at the time of their discharge or resignation. *See id.* ¶¶ 31, 38, 79-80, 82. In addition, "[a]s a pattern and practice," Plaintiff and other (but not all) class members received incomplete/inaccurate wage statements due to, among other things, Defendants' failure to include the total number of hours worked on the statements. *See id.* ¶¶ 32, 39, 85, 87-89. Defendants also failed to reimburse Plaintiff and other (but not all) class members for all necessary business-related expenses and costs. *See id.* ¶ 92. The Complaint placed no dollar figure on any of the claims.

The only requirement for diversity jurisdiction under CAFA that is in dispute on this motion is the amount-in-controversy. In its removal paperwork, using a putative class-size of no less than 450 persons (a figure supported by an accompanying declaration), Aerospace attempted to meet CAFA's $5,000,001 minimum amount-in-controversy by placing specific dollar figures on Plaintiff's second, third and sixth claims. In particular, Aerospace asserted that Plaintiff's meal and rest break claims should be valued, for jurisdictional purposes, at a minimum of $4,680,000, using an hourly rate of compensation of $26.00 per hour, 1000 working days over the relevant time period (250 days per year for four years), *and one meal period violation and one rest period violation per week*, which Aerospace asserted was "a reasonably conservative inference based on the Complaint's allegations." Notice of Removal ¶ 20. Aerospace valued Plaintiff's wage statement claim (for jurisdictional purposes) at $1,147,500 "based on the reasonable inference drawn from the Complaint that the alleged putative class members received inaccurate wage statements for the statutory period of one year, or for 26 pay periods." *Id.* ¶ 21. Aerospace also asserted that a 25% benchmark attorney's fee should be included in the amount-in-controversy, along with "the potential recovery" on Plaintiff's first, fourth, fifth and seventh claims, though it offered no particular figure whatsoever for any of those claims. *See id.* ¶¶ 22-25. The 25% attorney's fee benchmark brought the amount-in-controversy – which, again, Aerospace had calculated only based upon the second, third and sixth claims – up from $5,827,500 to $7,284,375. *See id.* ¶ 26.

The amount-in-controversy calculation is to encompass "all relief a court may grant on [the operative] complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Fritsch*, 899 F.3d at 793 ("[T]he amount

in controversy is the 'amount at stake in the underlying litigation,' and therefore 'the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails.'") (quoting *Chavez*, 888 F.3d at 417-18). It does not require a showing of liability, nor even of any evidence of any actual violation(s). It is simply a reflection of the amount that a plaintiff's allegations has put in controversy. Crucially, however, it is Aerospace's burden to make a sufficient showing on that topic. *See Fritsch*, 899 F.3d at 788-89.

Plaintiff's first tactic on this motion is to attack the evidence Aerospace relied upon in support of its amount-in-controversy calculation in the Notice of Removal, arguing that Aerospace should have supplied *more* evidence, including supporting business records or further details about putative class members' work schedules/days off, or that the evidence Aerospace did supply – in the form of a declaration – was not *competent* evidence. The Court finds no flaw *per se* in the evidence itself, but agrees with Plaintiff's secondary point that such evidence as it has provided does not allow Aerospace to bridge the gap between that evidence and the speculative conclusions Aerospace reaches about the violation rates supplying the foundation for its amount-in-controversy calculations.

As seemingly is always the case in wage-and-hour lawsuits attempting to find their way to federal court, violation rates are key to the calculations necessary to reach the $5,000,001 amount-in-controversy figure CAFA requires. As is true in many such cases, Aerospace has attempted to read the vague tea leaves strewn about by Plaintiff in the Complaint, which in this instance is based upon Plaintiff's allegations of a "pattern and practice" of various violations. From those meager offerings, Aerospace has attempted to supply violation rates – for each of the 450-plus members of the putative class – of one meal break violation and one rest period violation per week, along with a wage statement violation for each pay period during the one-year limitations period. They take this approach of *guessing* violation rates despite the fact that there is no one-year limit on diversity-based removals to federal court under CAFA. *See* 28 U.S.C. § 1453(b).

To be clear, contrary to Aerospace's reading (accurate or not) of Plaintiff's argument, this Court does not expect Aerospace to prove Plaintiff's case in the course of demonstrating an appropriate amount-in-controversy (as is often the response wage-and-hour defendants offer when a court wants something more than total guesswork from

them). In fact, "proving the case" is irrelevant for amount-in-controversy determinations. As that phrase makes relatively clear, the issue is the amount that a plaintiff has put in controversy by filing a Complaint, not what the evidence will actually show. *See, e.g.*, *Cain v. Hartford Life & Accident Ins. Co.*, 890 F.Supp.2d 1246, 1249 (C.D. Cal. 2012) ("'The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what a defendant will *actually owe*.'") (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008)) (omitting internal quotation marks).

Certainly, Aerospace has come forward with *some* relevant statistics (both in its Notice of Removal and its submission on this motion) regarding the workforce that would be covered by Plaintiff's proposed class. *See* Declaration of Diane Smith in Support of Notice of Removal of Defendants [*sic*] ITT Aerospace Controls LLC Under the Class Action Fairness Act, Docket No. 1-6, ¶¶ 3-4. But what Aerospace cannot do is simply pull violation rates out of thin air, whether it characterizes them as "conservative" or not, and conclusively state that they are "reasonable inference[s]" about the most important variables involved in the necessary calculation. *See generally Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193 (9th Cir. 2015). This is what Aerospace has done here, notwithstanding *Ibarra* and a host of other decisions criticizing such an approach when faced with "pattern and practice" allegations. *See id.* at 1199 (rejecting reliance on "pattern and practice" allegation to presume violation occurred on every shift where plaintiff had alleged he worked overtime without compensation on "multiple occasions during his employment," even where plaintiff also alleged defendant maintained "an institutionalized unwritten policy that mandates" the employment violations alleged); *Koreisz v. On Q Fin'l, Inc.*, No. CV 18-8662-MWF (SSx), 2018 WL 6567694, *3 (C.D. Cal. Dec. 12, 2018) ("Perhaps as a tacit acknowledgment that using 100% would not be reasonable [given a 'pattern and practice' allegation], On Q Financial assumes a 50% violation rate. But neither of Ms. Spertina's declarations nor On Q Financial's Opposition offers any reason 'grounded in real evidence' as to why a 50% violation rate is appropriate."); *Vilitchai v. Ametek Programmable Power, Inc.*, No. 3:15cv1957-L(BLM), 2017 WL 875595, *3 (Mar. 6, 2017) (concluding that complaint "does not support a 100% or any other specific violation rate" where it does not allege missing all meal and rest breaks) (emphasis added); *see also LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (distinguishing *Ibarra*

as a case where the plaintiff had "alleged a 'pattern and practice' of labor law violations but not universal violations"); *Dobbs v. Wood Grp. PSN, Inc.*, 201 F.Supp.3d 1184, 1188 (E.D. Cal. 2016) ("Generally, the spectrum of similar cases has two end-points: the Ninth Circuit distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations."). As the foregoing citations alone attest, Aerospace clearly overstates its case in asserting that "courts have consistently accepted reasonable assumptions such as those made by Defendant for calculating the CAFA jurisdictional amount, particularly when the allegations in a Complaint are as vague and broad as Plaintiff's are here." Docket No. 13, at 6:19-22.[1]

Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face), with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement. Perhaps they simply get Plaintiff to identify what the violation rates would be *for Plaintiff*, and then use that information as a sample to extrapolate out the calculation for the entire class.[2]

District courts are all-over-the-map in deciding how to handle, and whether to accept, the type of approach to the problem Aerospace has adopted. *See, e.g.*, *Koreisz*, 2018 WL 6567694, at *3; *Vilitchai*, 2017 WL 875595, at *3; *but see, e.g.*, *Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx), 2017 WL 2541401, *4 (C.D. Cal. June 12, 2017) (noting "a reasonable assumption of a weekly violation rate" where plaintiff included

---

[1] Aerospace's reliance on *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141 (C.D. Cal. 2010), in particular for the proposition that Aerospace "could properly calculate the amount in controversy based on a 100% violation rate" because of the lack of any "limitation on the number of violations" in the Complaint, *see* Docket No. 13, at 11:28-12:2, 13:22-23, is severely weakened by the fact that *Coleman* – which was not, in any event, a case involving a "pattern and practice" allegation – pre-dated *Ibarra* by five years.

[2] As an aside, however, Defendants cannot rely upon a complaint's allegations regarding typicality and commonality to justify this extrapolation. Those allegations are made merely as an attempt to satisfy the requirements for a class action, and it is commonly understood that typicality and commonality standards do not require that a putative class plaintiff's claims are exactly the same in scope/damages as other class members. *See, e.g.*, Phillips & Stevenson, RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2019), ¶¶ 10:292-296.5, at 10-96 – 98 (indicating that injuries in different amounts do not impact typicality); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (indicating that commonality requires only a "single common question" of law or fact).

"pattern and practice" allegation); *Mackall v. Healthsource Global Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 WL 4579099, *4 (N.D. Cal. Sept. 2, 2016) (finding one hour of overtime per period of employment reasonable where allegations were of "regular" or "pattern and practice" violations); *Blevins v. Republic Refrigeration, Inc.*, No. CV 15-04019 MMM (MRWx), 2015 WL 12516693, *9 (C.D. Cal. Sept. 25, 2015) (finding one-violation-per-week assumption reasonable where allegation was of "pattern and practice" of denying meal and rest periods). In this Court's view, defendants in this type of litigation will either have to change their approach along the lines the Court has suggested above (take some discovery in the wealth of time CAFA affords to do so), the Ninth Circuit will have to reconsider *Ibarra* and tell district courts to accept whatever number a defendant can imagine, or the Supreme Court or (don't hold your breath) Congress will have to step in to clear up what has become a wasteful and silly, but routine, exercise in mathematical fantasyland.

In the end, the Court concludes that Aerospace has not satisfied its preponderance-of-the-evidence burden of demonstrating that this case presents a sufficient amount-in-controversy. This is true even if the Court fully credits Aerospace's calculations for Plaintiff's wage statement claim (and adds attorneys' fees of 25% of the amount calculated for that claim to that figure), which might be considered to be on slightly more solid footing so far as assumptions go. While it of course would normally have to include such amounts in its calculations, the Court will not consider any amount-in-controversy figure for Plaintiff's fourth, fifth and seventh claims here because it is Aerospace's burden to demonstrate that figure and it has not offered *any* figure in connection with those claims in either its Notice of Removal or its Opposition to this motion.[3] The Court cannot simply pull numbers from the ether.

Again, it is *Aerospace's* burden to demonstrate a sufficient amount-in-controversy here. That Plaintiff has not offered a competing figure is effectively irrelevant to this Court. As another district court within the Ninth Circuit similarly put it:

> [Defendants] offer no support for the assumptions they make regarding [the violation rate(s) aspect of] their respective amount in controversy

---

[3] In a footnote in its Opposition brief, Aerospace does attempt to reason its way towards a $1.2 million amount-in-controversy on Plaintiff's overtime claim, *see* Docket No. 13, at 15 n.3, but in doing so it has again simply adopted a one-overtime-hour-per-week assumption that it simply calls "reasonable and conservative" without giving the Court any reason to conclude that it is not also entirely speculative.

6

> calculations. Given that Defendants have not met their burden, it is not necessary for Plaintiff to come forward with evidence in support of his estimate of the amount in controversy. Where, as here, the evidence is in equipoise, i.e., no evidence on either side, "the scales tip against federal-court jurisdiction."

*Vilitchai*, 2017 WL 875595, at *4 (quoting *Ibarra*, 775 F.3d at 1199). The Court grants Plaintiff's motion and remands the matter to the Superior Court for the County of Los Angeles.